FILED
United States Court of Appeals
Tenth Circuit

October 9, 2009

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

DELBERT McNEIL,

    Petitioner - Appellant,

v.

BRUCE HOWARD, Warden; MARK
SHIPMAN; SPANGLER; SANDERS;
PLAMER; LEATHERWOOD;
KELLY; NAYLOR; STEELMAN;
WOODRAL; BJ ROWTON; POGUE;
CLINTON; WILLIAMS,

    Respondents - Appellees.

No. 09-7031
(D.C. No. CIV-07-425-RAW-SPS)
(E.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **BRISCOE**, and **HOLMES**, Circuit Judges.

Delbert McNeil, a state prisoner proceeding *pro se*, filed suit pursuant to 42

U.S.C. § 1983, alleging that Defendants, employees and officials at the Jim E.

Hamilton Correctional Center, violated his constitutional rights by giving him a

---

[*]     This Order and Judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.  After examining the appellate record, this three-judge panel has determined unanimously that oral argument would not be of material assistance in the determination of this matter. *See* Fed. R. App. P. 34(a)(2).  The case is therefore ordered submitted without oral argument.

job assignment that was racially discriminatory and deliberately indifferent to his medical needs. He sought damages in the amount of $500,000 from each defendant. The district court granted Defendants' motion to dismiss, finding that Mr. McNeil had failed to exhaust administrative remedies. R., Vol. I, Doc. 59, at 4 (Dist. Ct. Order, filed Mar. 20, 2009). This Court has jurisdiction pursuant to 28 U.S.C. § 1291. Construing Mr. McNeil's *pro se* filings liberally, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), we affirm.

## BACKGROUND

On September 18, 2007, Mr. McNeil was assigned the job of "door greeter," the principal responsibilities of which involved opening a door for food service workers who approached with their hands full. Though Defendants say that the position was created to accommodate Mr. McNeil's disability (he has a back injury), Mr. McNeil claims instead that it was created "for the sole purpose to humiliate and discriminate against him" and to send a message to black inmates that they were "inferior." Aplt. Br. at 2-B. Mr. McNeil alleges that he was repeatedly required to say "Good morning, welcome to cell house one" while "waiving, smiling, showing teeth, wide eyed, and with a dialog [sic] of happiness." Aplt. Reply Br. at 2. He claims he was forced to work for eight-hour shifts with only one fifteen-minute break, in deliberate contradiction of his medical restrictions prohibiting "prolonged sitting or standing." Aplee. Br. at 3.

Pursuant to the Oklahoma Department of Corrections (DOC) "Inmate/Prisoner Grievance Process," R., Vol. 1, Doc. 35-1 (DOC Manual OP–090124), Mr. McNeil filed an informal "Request to Staff" (RTS) grievance on September 30, twelve days after he was assigned to the door greeter job. On October 5, a prison official responded to his complaint. Though not agreeing that the job was discriminatory, the official stated that he had taken steps to have Mr. McNeil reassigned to a more productive job within his medical restrictions. Mr. McNeil continued with the DOC grievance process. He eventually attempted to appeal to the final prison authority, but his complaint was returned unanswered because his initial September 30 RTS grievance had been submitted "out of time from date of incident." Aplt. Br. at 2-C. Mr. McNeil then filed this suit in the district court. The court dismissed the case, holding that because of the untimely filing Mr. McNeil "failed to properly exhaust his available administrative remedies in accordance with DOC's grievance procedures." R., Vol. I, Doc. 59, at 4. Mr. McNeil appealed.

## STANDARD OF REVIEW

"We review de novo the district court's finding of failure to exhaust administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002).

## DISCUSSION

The Prison Litigation Reform Act provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Proper exhaustion includes compliance with filing deadlines. *Woodford v. Ngo*, 548 U.S. 81, 90 (2006) (exhaustion requires "using all steps that the agency holds out, and doing so *properly*" (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002))); *see also Jernigan*, 304 F.3d at 1032. The prison grievance process itself determines whether a prisoner has properly exhausted his claims. *Jones v. Bock*, 549 U.S. 199, 218 (2007).

The Inmate/Prisoner Grievance Process provides for a three-step review. To make a complaint about a prison incident, an inmate must first submit a RTS "within seven calendar days of the incident." DOC Manual OP–090124 at (IV)(B)(2). After an intermediate review, the prisoner may appeal to the Administrative Review Authority (ARA) or Chief Medical Officer, and only a decision from one of these will make a decision "final" for exhaustion purposes.

Mr. McNeil was assigned the door greeter job on September 18; he filed his informal RTS on September 30. He eventually appealed to the ARA, but because the period between September 18 and September 30 exceeded the seven-day limit provided by the DOC regulations, the ARA rejected the petition as untimely. The

-4-

district court found that Mr. McNeil had failed to exhaust his administrative remedies and dismissed the case.

Mr. McNeil contends that it is error to use September 18 as the date of the door greeter "incident" for filing purposes. He claims that "[a]n incident can only occur after an event," Aplt Br. at 3-D, and thus it is not September 18 but October 5, 2007 (when he was transferred out of the door greeter job) that "establishes the act and task to be an incident," *id.* at 2-A. In support of his interpretation, Mr. McNeil cites to the dictionary definition of "incident," as well as to historical and commonsense usages of the word. He also notes that his allegedly untimely RTS was not rejected at the first or second levels of review; not until the final appeal did the DOC contend that the filing was deficient. This shows that the DOC itself initially adopted Mr. McNeil's understanding of "incident" and that Defendants now are "selecting what is convenient to obstruct the relief appellant is entitled to under the Constitution and state law." Aplt. Br. at 3-G–H.[1]

---

[1] Defendants suggest that "this statement may be viewed as tantamount to one alleging that DOC waived any arguments as to the timeliness of the RTS because it was not first identified at the grievance level." Aplee. Br. at 15. We believe that Mr. McNeil offers this argument in support of his definition of "incident" and not as a separate waiver argument. Even if it is meant to be a waiver argument, his "skeletal reference is insufficient to raise . . . a discrete appellate issue" and it must be considered forfeited. *United States v. Pursley*, 577 F.3d 1204, 1231 n.17 (10th Cir. 2009); *see also Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("[C]ursory statements, without supporting analysis and case law, fail to constitute the kind of briefing that is necessary to avoid application of the forfeiture doctrine.").

Mr. McNeil's novel definition of "incident" is not viable.  There is no dispute that the job assignment (and the *actions* of prison staff in giving Mr. McNeil the job) took place on September 18.  Moreover, Mr. McNeil himself initiated the grievance process on September 30—undercutting his argument that October 5 should be considered the "incident" date.  It is therefore entirely reasonable to conclude that the time period for filing began on September 18, making Mr. McNeil's RTS untimely.  *Cf. Del. State Coll. v. Ricks*, 449 U.S. 250, 258 (1980) ("[T]he proper focus is upon the time of the *discriminatory acts*, not upon the time at which the *consequences* of the acts became most painful." (quoting *Abramson v. Univ. of Haw.*, 594 F.2d 202, 209 (9th Cir. 1979)) (internal quotation marks omitted)); *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1206 (10th Cir. 2007) ("In general, a cause of action accrues on the date the employee is notified of an adverse employment decision by the employer." (quoting *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006)) (internal quotation marks omitted)); *Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 632 (10th Cir. 1993) ("Federal law controls questions relating to accrual of federal causes of action.  A civil rights action accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action." (citations omitted)).

In addition, Mr. McNeil's understanding of "incident" would undermine the prison's dispute resolution process.  Strict adherence to exhaustion requirements

"protects administrative agency authority" and "gives an agency an opportunity to correct its own mistakes with respect to the programs it administers before it is haled into federal court."  *Woodford*, 548 U.S. at 89 (internal quotation marks omitted).  As Defendants note, to adopt Mr. McNeil's definition would make the prison grievance policy useless.  "DOC would have no knowledge of the problem/action alleged and thus no ability to initiate corrective action because the inmate would not be required to grieve or provide notice of such until after the problem was discontinued or abandoned."  Aple. Br. at 11.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is AFFIRMED.

Entered for the Court

Jerome A. Holmes
Circuit Judge