**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 21, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

QUINCEY GERALD KEELER, a/k/a
Jerry,

      Plaintiff-Appellant,

v.

ARAMARK,

      Defendant-Appellee.

No. 13-3117
(D.C. No. 6:11-CV-01372-EFM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HARTZ**, **O'BRIEN**, and **GORSUCH**, Circuit Judges.

Jerry Keeler felt that his employer, ARAMARK, didn't appreciate his performance as a food service worker. ARAMARK never made Mr. Keeler employee of the month, nor did it allow him to work the overtime hours he thought he deserved. Taking matters into his own hands, Mr. Keeler delivered a series of threatening letters to his higher-ups. One letter claimed it would be their

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal. *See* Fed. R. App. P. 34(a)(2) and 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

"final warning" and another promised that someone would "start a riot . . . if [Mr. Keeler] suffered and died from a diabetic attack cause of stress." At the same time, Mr. Keeler also filed charges with the Kansas Human Rights Commission (KHRC) and the EEOC, but by that point ARAMARK had already launched an investigation into Mr. Keeler's allegations and learned — that far from being the victim of discrimination — Mr. Keeler actually intimidated many of his coworkers with his behavior. All this convinced ARAMARK that the proper course was to end Mr. Keeler's employment.

Mr. Keeler responded with a sleigh of *pro se* lawsuits. In the present suit, Mr. Keeler alleges that ARAMARK violated his rights under Title VII when, in his view, it fired him in retaliation for filing complaints with the KHRC and EEOC. He has also brought state law claims against ARAMARK for defamation, wrongful discharge, and civil conspiracy. The district court, however, held that no "reasonable jury could find that ARAMARK's stated reasons for Keeler's termination were mere pretext for a retaliatory motive." *Keeler v. ARAMARK*, No. 11-1372-EFM, 2013 WL 1568039, at *6 (D. Kan. Apr. 12, 2013). It also held that there was no evidence anyone learned about the reasons for Mr. Keeler's termination other than the KHRC, the EEOC, and the federal courts. And as a matter of Kansas law, the court reasoned that disclosure to these entities was entitled to qualified privilege, if not absolute privilege, against defamation

claims. *See id.* at \*7-8. Neither did it see any merit to Mr. Keeler's claims for wrongful termination and civil conspiracy.

We discern no error in either the district court's reasoning or result. Even assuming Mr. Keeler has shown a *prima facie* case of retaliatory discharge, ARAMARK offered legitimate, nonretaliatory reasons for firing him: he intimidated his coworkers, threatened a riot, and refused to cooperate with its investigations. True, Mr. Keeler would survive summary judgment if he could show there is a genuine issue of material fact on whether these stated reasons are really just pretext for retaliation. *See Young v. Dillon Cos.*, 468 F.3d 1243, 1249-50 (10th Cir. 2006). And Mr. Keeler insists that during an interview with an ARAMARK investigator, the investigator never suggested Mr. Keeler's behavior was troubling his superiors. He insists, too, that he was never disciplined for intimidating others. But neither fact fairly gives rise to an inference of pretext.

"The relevant inquiry" in Title VII retaliation cases "is not whether the employer's proffered reasons were wise, fair or correct, but whether the employer honestly believed those reasons and acted in good faith upon those beliefs." *Proctor v. United Parcel Serv.*, 502 F.3d 1200, 1211 (10th Cir. 2007) (alterations omitted). And Mr. Keeler offers no evidence that ARAMARK's investigation into his case was made in bad faith or that ARAMARK is misrepresenting the results of that investigation. Neither does ARAMARK's failure to discipline Mr. Keeler before he was terminated change our analysis. Even if ARAMARK had a

policy of progressively disciplining troubled employees, "[t]he mere fact that an employer failed to follow its own internal procedures does not necessarily suggest that the substantive reasons given by the employer for its employment decision were pretextual." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1222 (10th Cir. 2007) (alteration omitted).

Besides, Mr. Keeler's retaliation claim fails for still another and even more fundamental reason:  he has no "evidence from which a reasonable factfinder could conclude that those who decided to fire him had knowledge of his protected activity." *Hinds v. Spring/United Mgmt. Co.*, 523 F.3d 1187, 1203 (10th Cir. 2008).  The record makes clear that ARAMARK decided to fire Mr. Keeler several weeks before Mr. Keeler filed his administrative complaints.  And Mr. Keeler points to no evidence that would call into question ARAMARK's account of the sequence of events.  Thus, we further conclude that Mr. Keeler cannot even establish a *prima facie* case of retaliation.

Separately, Mr. Keeler challenges the district court's assessment of his defamation claim.  But his only argument on this score is that the reasons ARAMARK gave for his termination are inaccurate.  Mr. Keeler does not point us to any Kansas authority holding that he can maintain a defamation claim on grounds that his employer disclosed its reasons for firing him to judicial and administrative bodies.  With the district court's holding thus unchallenged — and even affording Mr. Keeler the solicitude we owe *pro se* litigants — we must

affirm.  *See Tran v. Trs. of State Colls. in Colo.*, 355 F.3d 1263, 1266 (10th Cir. 2004).

Separately still, Mr. Keeler maintains that the district court erred when it refused to allow his claims for wrongful discharge and civil conspiracy to proceed to trial.  Yet again, we can see no error.  The district court could not find any authority to support the existence of a cause of action for wrongful discharge under Kansas law, and even today Mr. Keeler still points us to none.  On the issue of civil conspiracy, the district court held that Mr. Keeler couldn't identify any unlawful act that ARAMARK could have engaged in.  Even at this very late date, Mr. Keeler has still not identified any.

The judgment of the district court is affirmed.  Mr. Keeler's motion for leave to proceed *in forma pauperis* is denied.  Mr. Keeler is reminded that he is obligated to pay the filing and docket fees in full to the clerk of the district court.

ENTERED FOR THE COURT


Neil M. Gorsuch
Circuit Judge