**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**June 28, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JUDY JARAMILLO,

       Plaintiff - Appellant,

v.

ADAMS COUNTY SCHOOL DISTRICT 14,

       Defendant - Appellee.

No. 11-1160
(D.C. No. 1:09-CV-02243-RPM-MEH)

_____

**ORDER**
_____

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**, Circuit Judge.
_____

This matter is before the court on appellant's petition for panel rehearing. Upon consideration, the petition is denied. We will, however, amend our original opinion sua sponte. The changes, which include minor modifications to two sentences, can be found on pages 2 and 3 of the decision. A copy of our amended opinion is attached to this order. The clerk is directed to file the amended version nunc pro tunc to the original filing date.

Entered for the Court

ELISABETH A. SHUMAKER, Clerk

FILED
United States Court of Appeals
Tenth Circuit

June 12, 2012

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

JUDY JARAMILLO,

      Plaintiff - Appellant,

v.

ADAMS COUNTY SCHOOL
DISTRICT 14,

      Defendant - Appellee.

No. 11-1160

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
(D.C. No. 1:09-CV-02243-RPM-MEH)**

---

Blain D. Myhre of Blain Myhre, LLC, Englewood, Colorado (and Ralph G. Torres
of Law Offices of Ralph G. Torres, Denver, Colorado, on the briefs), for Plaintiff
- Appellant.

Lawrence L. Lee (and Heather K. Kelly of Gordon & Rees, LLP, on the brief),
Denver, Colorado, for Defendant - Appellee.

---

Before **KELLY**, Circuit Judge, **BRORBY**, Senior Circuit Judge, and **O'BRIEN**,
Circuit Judge.

---

**KELLY**, Circuit Judge.

---

      Plaintiff-Appellant, Judy Jaramillo, appeals from the district court's grant

of summary judgment in favor of Defendant-Appellee, Adams County School

District 14, on her 42 U.S.C. § 1981 claim for race discrimination.  We have jurisdiction pursuant to 28 U.S.C. § 1291, and affirm.

Background

Ms. Jaramillo, a Hispanic female, was employed as principal of Hanson PreK-8 school.  See Jaramillo v. Adams Cnty. Sch. Dist. 14, No. 09-cv-02243, 2011 WL 1043332, at *1 (D. Colo. Mar. 17, 2011) (hereinafter "Order").  More than 70% of the students attending Hanson are Hispanic, and Ms. Jaramillo was the only Hispanic principal in the District.  Id.  In the fall of 2008, the District administration contemplated policy changes, including implementing an English Language Learners policy ("ELL policy"), which stresses English immersion (rather than teaching subjects in Spanish as well as English), and operating Hanson on the same academic year as other schools in the District.  Id.  These proposals were controversial in the Hispanic community and apparently with some of the teachers at Hanson.  Id.  The ELL policy was the topic of a Board of Education public study session.  Dr. Sue Chandler, interim superintendent of the District, received a copy of an e-mail about a planned teachers' meeting which contained false and inaccurate information.  Aplee. Br. 8.  This misinformation suggested that the ELL policy was going to eradicate any Spanish instruction in the district.  Id.  On the morning of February 6, 2009, Dr. Chandler met with Ms. Jaramillo to ask for the name of the person who had misinformed her as to the

- 2 -

specifics of the policy.  Id.  Ms. Jaramillo refused to give the name.  They met again later in the afternoon and Dr. Chandler questioned Ms. Jaramillo about her lack of support for the administration's policy, and requested that Ms. Jaramillo provide Dr. Chandler with the name of the person who informed Ms. Jaramillo about the Board's study session.  Aplt. App. 0476.  Dr. Chandler informed Ms. Jaramillo that failing to provide the name would result in disciplinary action.  Id. at 0477.  Ms. Jaramillo refused to provide the name.  Id.

Dr. Chandler placed Ms. Jaramillo on paid administrative leave when Ms. Jaramillo did not comply.  Ms. Jaramillo was notified by letter, dated February 11, 2009.  Id.  Thereafter, by letter dated February 17, 2009, Dr. Chandler recommended Ms. Jaramillo's termination.  Id.  Ms. Jaramillo sought review, pursuant to the Administrator's Meet and Confer Handbook, by a three-member panel, one of which was chosen by Ms. Jaramillo.  Id.  Ms. Jaramillo did not attend the session but submitted her position through her attorney.  The panel unanimously agreed, on March 25, 2009, to recommend that the Superintendent recommend termination to the Board.  The Board accepted the Superintendent's recommendation on April 14, 2009 on a four to one vote.  Id.  The dissenting member, Larry Quintana, was the only Hispanic member of the Board.  Id.

Ms. Jaramillo filed her complaint with the district court on September 18, 2009, later amending it on February 19, 2010.  Aplt. App. 0014-0039.  The District's motion for summary judgment was then granted on March 17, 2011.

- 3 -

This appeal followed.

<u>Discussion</u>

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.  <u>See</u> <u>Morris v. City of Colo. Springs</u>, 666 F.3d 654, 660 (10th Cir. 2012).  Although we construe the evidence in the light most favorable to the non-movant, to avoid summary judgment, a non-movant must provide significantly probative evidence that would support a verdict in her favor.  <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249-50 (1986).

On appeal, Ms. Jaramillo argues that she satisfied her burden under the Supreme Court's <u>McDonnell Douglas Corp. v. Green</u>, 411 U.S. 792 (1973), framework, and that a reasonable jury could find that the District's motives for termination were pretextual.  Aplt. Br. 20.

The district court assumed, without deciding, that Ms. Jaramillo made a prima facie case based on her positive performance for nearly nine years, her membership in a protected class, and her termination and replacement by a non-Hispanic person.  <u>See</u> Order at *2.  The District also proffered a legitimate non-discriminatory reason for the adverse action—insubordination.  While considering pretext, the district court stated that "[t]he charge of insubordination for failure to give Dr. Chandler the name of the informant on February 6, 2009, appears to be

- 4 -

unfair and unreasonable, given the plaintiff's years of performance as the principal of Hanson." Id. Continuing, the court explained, however, that "[a] violation of that statute [§ 1981] depends upon a showing that the termination was made because of the plaintiff's race" and not whether the decision was "reasonable." Id. The court held that there was no evidence of racial bias or pretext in this case. Id. at *3-*4.

A party may show pretext "by demonstrating such weaknesses, implausibilities, inconsistencies, incoherences, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted nondiscriminatory reasons." See Crowe v. ADT Sec. Servs., Inc., 649 F.3d 1189, 1196 (10th Cir. 2011). Pretext may also be shown by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated. Id.

Ms. Jaramillo argues that she showed pretext based upon: (1) the testimony of Board member Larry Quintana, (2) the unreasonable nature of Dr. Chandler's request, and (3) testimony of a member of the administrative review panel who understood that the insubordination was something different than what the Board acted upon. Aplt. Br. 17-20.

The testimony of Mr. Quintana, the dissenting Board member who voted against her termination, adds little because it is based on conjecture. When

questioned about the matter, Mr. Quintana stated:

> Mrs. Jaramillo questioned Dr. Chandler's decision on the year-round school. That was bad enough. But the fact that Mrs. Jaramillo was Hispanic and questioned her was even a worse offense in this whole process.

Aplt. Appx. 0444. Furthermore, when asked whether he thought racism was involved in the termination decision, he answered "yes" and explained that he felt the termination was a product of institutional racism in the District that he—as a Hispanic individual—had also experienced, see id., although he specifically testified that he did not believe that two of the Board members who voted for termination were motivated by racism, and he could not say with certainty about a third Board member's rationale, id. at 0546-47.

Ms. Jaramillo also relies on the testimony of the District's human resource director that insubordination occurs when an employee "blatantly disregards [a] reasonable request" from a supervisor. Aplt. App. 0456. She argues that Dr. Chandler's request for the name of the person who told Ms. Jaramillo about a *public* Board meeting is simply not a reasonable request. Finally, she notes that one of the members of the review panel, Ms. Wanda Clark, questioned whether Ms. Jaramillo's returning to the school building to return some evaluations after she had been placed on administrative leave constituted insubordination or a miscommunication. Id. at 0460.

As this court has noted, "mere conjecture that an employer's explanation is

a pretext for intentional discrimination is an insufficient basis for denial of summary judgment." See Santana v. City and Cnty. of Denver, 488 F.3d 860, 864-65 (10th Cir. 2007). Nothing in Mr. Quintana's testimony, other than vague references to institutional racism and "past experience," suggests that he could point to specific evidence of discriminatory intent by any of the decisionmakers in *this* case. Aplt. App. 0208, 0444, 0546. Courts are understandably reluctant to allow theories of institutional racism to displace the requirement of personal knowledge of facts concerning adverse employment actions. See Zokari v. Gates, 561 F.3d 1076, 1089 (10th Cir. 2009) (citing Fed. R. Evid. 602). In fact, Mr. Quintana testified that out of the four Board members that voted in favor of termination, he could not point to any specific racial animus on the part of three of the members. Aplt. Appx. 0546-47. While claiming that Ms. Lewis voted to terminate based on race, the only support for that conclusion was his "past experience in things that relate to executive session that I can't talk about, the pattern [of discrimination] was there." Id. at 0546. Though we must construe Mr. Quintana's testimony in the light most favorable to a triable issue, it cannot substitute for proof.

The testimony of the human resource director concerning what constitutes insubordination does not create a triable issue on pretext for several reasons. First, Ms. Jaramillo was provided ample notice by Dr. Chandler of what constituted insubordination. As the letter to her stated:

- 7 -

As your Supervisor, when I request information from you or direct that you take certain action, you are required to comply. Refusing to provide information requested and willfully not complying with my specific instructions to you, constitute insubordination.

Aplt. App. 0286; see also id. at 0476-77. It is uncontroverted that Ms. Jaramillo did not provide the requested information, despite being given three chances to do so. Second, the human resource director was not a decisionmaker on this personnel action. Finally, though the information Ms. Jaramillo withheld may appear trivial and the sanction harsh, our task is not to second-guess an employer's honestly held (even if erroneous) business judgment about what information is needed from an employee and the consequences of a failure to disclose it. Young v. Dillon Cos., 468 F.3d 1243, 1250 (10th Cir. 2006).

Nor does the fact that Ms. Clark had questions about whether other conduct of Ms. Jaramillo constituted insubordination suggest pretext. See Aplt. App. 0460. The fact that Ms. Clark ultimately deferred to Dr. Chandler or believed that the other two members would side with the District administration does not suggest that the District's reason for termination was unworthy of belief. See id. at 0461-62. Absent evidence to the contrary, we presume that proceedings are fair, regular, and on the merits. Even had Ms. Clark dissented, the fact that administrative or Board decisions are not unanimous does not undercut their authority.

Ms. Jaramillo's argument that the District is liable under a "cat's paw"

theory for Dr. Chandler's actions necessarily fails as well. Aplt. Reply Br. 2, 18-22. The Supreme Court has held that "where an employee performs an act motivated by discriminatory animus intending to cause an adverse employment decision, the employer will be liable if that act is a proximate cause of the eventual adverse employment decision." See Crowe, 649 F.3d at 1194; see also Staub v. Proctor Hosp., — U.S. —, 131 S. Ct. 1186, 1194 (2011). Though the Supreme Court noted in Staub that a superseding decisionmaker does not negate the supervisor's bias as a possible proximate cause of the employment decision, 131 S. Ct. at 1192, there is insufficient evidence to indicate that Dr. Chandler discriminated in the first place. Ms. Jaramillo cannot show proximate cause between Dr. Chandler's alleged racial/ethnic bias (for which there is no evidence) and her discharge. There is no proof of bias on the part of the review panel, let alone the final decisionmaker, the Board. Ms. Jaramillo admitted in her deposition that Ms. Chandler never used racially offensive language towards her, Aplt. App. 0179, 0183, and that she did not report any instances of prior discrimination, id. at 0186. What the record does reveal in this case is disagreement about administrative policy choices—hardly infrequent in the education setting. But that does not constitute pretext. As noted, Mr. Quintana's testimony is too vague to be helpful here. Therefore, the District is not liable based on a theory of "cat's paw" liability.

AFFIRMED.