FILED
United States Court of Appeals
Tenth Circuit

August 1, 2012

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

GEORGETTE KONZAK,

　　　　Plaintiff-Appellant,

v.

WELLS FARGO BANK, N.A.,

　　　　Defendant-Appellee.

No. 11-1485
(D.C. No. 1:10-CV-00922-RPM)
(D. Colo.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **McKAY** and **LUCERO**, Circuit Judges.

Georgette Konzak sued her former employer, Wells Fargo Bank, N.A. ("Wells

Fargo" or "bank"), for employment discrimination, asserting that her employment

was terminated on the basis of her age and gender, in violation of Title VII of the

Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e-17 ("Title VII"), and the Age

Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621-634 ("ADEA"). The

---

[*]　　After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist the determination of this
appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R App. P. 32.1 and 10th Cir. R. 32.1.

district court granted Wells Fargo's motion for summary judgment. Ms. Konzak appeals. We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I.    Background

Ms. Konzak, who was born in in 1962, was employed by Wells Fargo as a personal banker in the Grand Junction, Colorado, district. On July 1, 2008, the assistant manager discovered that Ms. Konzak had entered a "placeholder number" on a new-account application, rather than the applicant's driver's license number. She told the district manager, Pam Schaaf, who directed her to report it to the human resources department ("HR"). HR turned the matter over to Richard Johnson, Vice President of Special Investigations, who conducted an investigation. Mr. Johnson discovered that Ms. Konzak had used the placeholder number instead of a correct driver's license number on numerous account applications. During his investigation, he interviewed Ms. Konzak by telephone, and she also submitted a written statement of her position. Mr. Johnson and others at the Wells Fargo Corporate Security Department, the Corporate Employee Relations Department, and the Regional Compliance Department ("corporate committee") determined that Ms. Konzak's use of the fictitious numbers violated Wells Fargo's Code of Ethics and Business Conduct and its Customer Identification Policy ("CIP"). In addition, they determined that Ms. Konzak had exposed Wells Fargo to liability under the Bank Security Act and the USA PATRIOT Act. Consequently, the corporate committee determined this conduct warranted termination. This decision was communicated to the Grand

Junction branch's Community Bank President, Steve Irion, who questioned whether there was any way to retain Ms. Konzak. When told that Ms. Konzak's actions violated the CIP and federal law, he realized there was no other choice and he made the decision to terminate her employment.

Ms. Konzak did not dispute that she regularly used a fictitious number when opening an account for an established Wells Fargo customer. She testified that a manager had told her that it was acceptable to use a placeholder number instead of the actual driver's license number if the customer was an existing customer of the bank. After her termination, she discovered that others had also used fictitious numbers, but were not fired. Ms. Konzak also named an employee who had undergone progressive discipline for committing notary infractions, while she herself was fired summarily. Another employee, a younger male, was not disciplined for improperly taking sales credit. She contended that if, in fact, use of the placeholder number was improper, the bank's "back shop" procedures would have alerted her, as it did when she entered an incorrect social security number, passport number, or alien identification number. She never received notification from the "back shop" about her use of fictitious numbers. She also alleged that the bank never corrected the fictitious numbers.

Ms. Konzak testified that she was discharged shortly after she told district manager Pam Schaaf that she was interested in being promoted to a management position. She claimed that Ms. Schaaf preferred younger employees and males to

- 3 -

older females.  Ms. Konzak did not allege that bank president Mr. Irion or the local branch manager, Frances Baer, discriminated against her.  She stated that two days after she was fired, Mr. Irion suggested that she retain an attorney to challenge her termination.

Ms. Konzak twice appealed her termination internally.  After obtaining a right-to-sue letter from the Colorado Civil Rights Division ("CCRD"),[1] she filed the underlying lawsuit.  Ultimately, the district court granted Wells Fargo's motion for summary judgment.  Ms. Konzak appeals, arguing that she presented sufficient evidence to show that Wells Fargo's stated reason for terminating her employment was pretextual, that she was erroneously required to show "pretext-plus,"[2] and that disputed issues of material fact concerning who made the decision to discharge her precluded summary judgment.

---

[1]     To the extent Ms. Konzak argues on appeal (without record support) that the CCRD issued a favorable letter that is binding on this court, Aplt. Opening Br. at 37, we reject that argument. *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1331 (10th Cir. 1999) ("[W]hen the independent facts before the district court judge fail to establish a genuine issue of material fact, a favorable [CCRD] letter of determination does not create one.").

[2]     "Under pretext-plus, the plaintiff must do more than show pretext; [she] must also come forward with additional, direct evidence of a discriminatory motive." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1312 (10th Cir. 2005) (citation omitted) (internal quotation marks omitted).  This circuit has rejected the pretext-plus doctrine. *Id.*

## II.     Legal Standards

We review the district court's summary judgment order de novo, applying the same legal standards as the district court. *Swackhammer v. Sprint/United Mgmt. Co.*, 493 F.3d 1160, 1167 (10th Cir. 2007).  Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Pursuant to this standard, "we must view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Swackhammer*, 493 F.3d at 1167 (internal quotation marks omitted).  "The purpose of a summary judgment motion is to assess whether a trial is necessary.  In other words, there must be evidence on which the jury could reasonably find for the plaintiff." *Berry v. T-Mobile USA, Inc.*, 490 F.3d 1211, 1216 (10th Cir. 2007) (citation omitted) (internal quotation marks omitted).  "Because our review is de novo, we need not separately address [Ms. Konzak's] argument that the district court erred by viewing evidence in the light most favorable to [Wells Fargo] and by treating disputed issues of fact as undisputed." *Rivera v. City & Cnty. of Denver*, 365 F.3d 912, 920 (10th Cir. 2004).

Title VII makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e2(a)(1).  "A plaintiff proves a violation of Title VII either by direct evidence of discrimination or by following the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 US. 792

(1973)." *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012) (parallel citations omitted). The three-step *McDonnell Douglas* inquiry provides that if the plaintiff proves a prima facie case of discrimination, the burden "shifts to the defendant to produce a legitimate, non-discriminatory reason for the adverse employment action." *Id.* If such a reason is produced, "the burden then shifts back to the plaintiff to show that the plaintiff's protected status was a determinative factor in the employment decision or that the employer's explanation is pretext." *Id.*

The ADEA makes it "unlawful for an employer . . . to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).[3] The ADEA requires "but-for" causation; therefore, a plaintiff claiming age discrimination must establish by a preponderance of the evidence that his employer would not have taken the challenged employment action but for the plaintiff's age. *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 177-78 (2009). "*Gross* does not disturb longstanding Tenth Circuit precedent by placing a heightened evidentiary requirement on ADEA plaintiffs to prove that age was the sole cause of the adverse employment action." *Jones v. Okla. City Pub. Schs.*, 617 F.3d 1273, 1278 (10th Cir. 2010). Nor does *Gross* "preclude our continued application of *McDonnell Douglas* to ADEA claims." *Id.*

---

[3]   Ms. Konzak was 46 years old when her employment was terminated.

### III.    Analysis

The parties do not dispute that the first two *McDonnell Douglas* steps have been satisfied:  Ms. Konzak established a prima facie case of gender and age discrimination; Wells Fargo produced a legitimate, non-discriminatory reason for discharging her.  Therefore, we proceed to evaluate whether the proffered reason was a pretext for discrimination.

A plaintiff can withstand summary judgment if she presents evidence sufficient to raise a genuine dispute of material fact regarding whether the defendant's articulated reason for the adverse employment action is pretextual. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147-49 (2000). "Pretext exists when an employer does not honestly represent its reasons for terminating an employee."  *Miller v. Eby Realty Group LLC*, 396 F.3d 1105, 1111 (10th Cir. 2005).  "Pretext can be shown by such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons." *Rivera*, 365 F.3d at 925 (internal quotation marks and brackets omitted).  "Pretext may also be shown by providing direct evidence discrediting the proffered rationale, or by showing that the plaintiff was treated differently from others similarly situated." *Jaramillo v. Adams Cnty. Sch. Dist. 14*, 680 F.3d 1267, 1269 (10th Cir. 2012).

Ms. Konzak contends that she produced evidence demonstrating that Wells Fargo's reason for discharging her was unworthy of belief. She first asserts that there existed a disputed issue of material fact concerning whether the use of fictitious numbers violated any bank policy or federal law. She relies on her testimony and the testimony of other bank employees that they had been instructed to do so. She also relies on the affidavit of a former Wells Fargo employee stating that Ms. Baer "first told [her] that this type of practice [using placeholder numbers] was acceptable." Aplt. App. Vol. II at 320. But Ms. Konzak's evidence does not show that the corporate committee or Mr. Irion knew that other employees were also using fictitious numbers. Therefore, the evidence does not demonstrate a disputed fact material to the termination decision.

Ms. Konzak next asserts that the "back shop" check of all account applications would have picked up the use of fictitious numbers if their use had been improper, and she had never been questioned. Contrary to Ms. Konzak's assertion, however, the record does not support her claim that the "back shop" would have caught this procedure. She relies on (1) an audit report, even though that report does not mention a procedure for checking applications, *see id.* at 378-82; (2) the testimony of Ms. Baer, who stated that she believed the "back shop" was a computer process, particularly because of the "sheer number" of documents processed, *id.* at 296; (3) the testimony of Dawn Dela Pena, a personal banker, who stated that the "back shop" would give notice of errors in the customer identification fields, but she did not

- 8 -

know whether the "back shop" would detect an incorrect driver's license number as long as the application contained the correct amount of digits, *id.* at 316; and (4) an affidavit of Lori Southern who stated that when fictitious numbers were used, either she or someone in the "back shop" would later update the numbers, *id.* at 321. Ms. Southern did not state that the "back shop" would identify any incorrect drivers' license numbers. This evidence is insufficient to demonstrate a disputed material fact that the "back shop" would have discovered Ms. Konzak's use of fictitious numbers.

Similarly, Ms. Konzak's allegation that the bank did not correct the fictitious numbers upon discovery, thus demonstrating that this could not have been the true reason for discharging her, is not supported by the record. Ms. Konzak relies on Ms. Baer's testimony that she did not correct the numbers and she did not remember either instructing others to do it or being instructed to do it. *Id.* at 297. This testimony of a single employee, albeit the store manager of the bank location where Ms. Konzak worked, is insufficient to create the inference that no one at Wells Fargo ever corrected the fictitious numbers.[4] Ms. Konzak also claims that the bank's failure to correct the fictitious numbers demonstrates that it did not deem them important enough to warrant discharging her summarily; rather, the bank should have applied its progressive discipline policy. Ms. Konzak does not dispute the bank's position

---

[4]    Ms. Konzak contends that although Wells Fargo had an opportunity to produce evidence that the fictitious numbers were corrected, it failed to do so. But it was not Wells Fargo's burden to produce evidence to negate Ms. Konzak's claim. *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) ("[A] movant that will not bear the burden of persuasion at trial need not negate the nonmovant's claim.").

that its policies permitted immediate termination of employment under appropriate circumstances. As noted, the record does not support Ms. Konzak's claim that Wells Fargo failed to correct the fictitious numbers. Therefore, she cannot base her progressive-discipline argument on that premise.

Next, Ms. Konzak argues that although Mr. Irion testified that he made the decision to discharge her, that was not his honestly held opinion. She asserts that two days after her discharge, he contacted her to "suggest[] that [she] retain an attorney to challenge the validity of [her] termination and help prove that [she] did nothing wrong." *Id.* at 290. Mr. Irion testified that he did not remember doing so, but we view the evidence in the light most favorable to Ms. Konzak. Even so, it does not undercut Mr. Irion's determination that the corporate HR investigation left him no choice but to terminate her employment. Ms. Konzak has not adduced any evidence, nor does she claim, that the corporate investigation was instigated or pursued based on her age or gender. "To raise an inference of pretext in the face of the employer's legitimate, nondiscriminatory explanation, the plaintiff must undermine the employer's credibility to the point that a reasonable jury could not find in its favor." *Jaramillo v. Colo. Judicial Dep't*, 427 F.3d 1303, 1310 (10th Cir. 2005). Mr. Irion's nondiscriminatory reason "remain[ed] unrebutted and [his] credibility has not been so damaged as to render [his] explanations suspect." *Swackhammer*, 493 F.3d at 1169.

In a related argument, Ms. Konzak contends that the termination decision was in fact made by Ms. Schaaf. This contention is based primarily on her claim that

Ms. Schaaf had "multiple communications" with the corporate committee, thereby influencing the committee to discharge Ms. Konzak. *E.g.*, Aplt. Opening Br. at 41. Ms. Konzak relies on Ms. Schaaf's testimony. But Ms. Schaaf testified that she was not involved in the investigation conducted by HR. Aplt. App. Vol. I at 142. She stated that she had been contacted by HR, not to give input about Ms. Konzak, but to be told what the investigation had uncovered. *Id.* The evidence does not support Ms. Konzak's claim that Ms. Schaaf was the actual decisionmaker or that she influenced the corporate committee. Similarly unsupported is Ms. Konzak's claim that Ms. Schaaf had such influence over Mr. Irion, under a "cat's paw" theory of liability, that she convinced him to discharge her. *Cf. Staub v. Proctor Hosp.*, 131 S. Ct. 1186, 1194 (2011) (holding "that if a supervisor performs an act motivated by [discriminatory] animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under [antidiscrimination statutes]." (footnote omitted)). Ms. Konzak relies on an affidavit of a former Wells Fargo employee who offered the following opinion: "I believe Mr. Irion was heavily influenced by Ms. Shaaf's [sic] reports to him. She had the ability to sway his views about the managers and people below her." Aplt. App. Vol. II at 362. This general, unsubstantiated opinion that does not refer to Ms. Konzak or her situation is insufficient to create an issue of fact on a cat's paw claim.

Although Ms. Konzak has proffered the names of other Wells Fargo employees she claims were similarly situated to her but were not discharged for comparable or even identical actions, the evidence does not show that the alleged transgressions of those employees were reported to the corporate HR office. Therefore, the other employees were not similarly situated to Ms. Konzak. *See McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) ("To show disparate treatment, [a plaintiff] must establish [that] she was similarly situated to [the claimed comparators] in all relevant respects."). And even taking as true the evidence that Ms. Schaaf favored younger and male employees over older female employees, the evidence does not support a claim that Ms. Schaaf was involved in the decision to discharge Ms. Konzak.

In short, Ms. Konzak's evidence is insufficient to demonstrate pretext or a genuine issue of disputed material fact concerning Wells Fargo's stated reasons for terminating her employment.

> We do not ask whether the employer's reasons were wise, fair or correct; the relevant inquiry is whether the employer honestly believed its reasons and acted in good faith upon them. Even a mistaken belief can be a legitimate, non-pretextual reason for an employment decision. Thus, we consider the facts as they appeared to the person making the decision, and we do not second-guess the employer's decision even if it seems in hindsight that the action taken constituted poor business judgment. The reason for this rule is plain: our role is to prevent intentional discriminatory [employment] practices, not to act as a "super personnel department," second guessing employers' honestly held (even if erroneous) business judgments.

*Riggs v. Airtran Airways, Inc.*, 497 F.3d 1108, 1118-19 (10th Cir. 2007) (citations omitted) (internal quotation marks omitted).[5]

## IV.    Conclusion

For the reasons discussed above, we conclude that Ms. Konzak's evidence of pretext is insufficient to withstand summary judgment.  *See Young v. Dillon Cos.*, 468 F.3d 1243, 1250 (10th Cir. 2006) (stating a prima facie case and *sufficient* evidence of pretext may permit a finding that the employer unlawfully discriminated).  In conducting our de novo review, we have considered the cumulative weight of her proffered evidence based on the evidence as a whole. *See Annett v. Univ. of Kan.*, 371 F.3d 1233, 1241 (10th Cir. 2004) ("When assessing whether a plaintiff has made an appropriate showing of pretext, we must consider the evidence as a whole."  (internal quotation marks and brackets omitted)).

The judgment of the district court is AFFIRMED.

Entered for the Court

Monroe G. McKay
Circuit Judge

---

[5]    Contrary to Ms. Konzak's argument, she was not required to show pretext-plus because that doctrine is relevant only after the employee has discredited the employer's reasons for the employment decision.  *Jaramillo*, 427 F.3d at 1312.  Since she did not do so, pretext-plus is irrelevant.  *Cf. Rivera*, 365 F.3d at 926 (rejecting argument that the district court "found an adequate showing of pretext but required additional evidence").

- 13 -