FILED
United States Court of Appeals
Tenth Circuit

January 13, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DAVID J. DICKMAN,

　　　　Plaintiff – Appellant,

v.

RAY LAHOOD, Secretary of the
Department of Transportation,

　　　　Defendant – Appellee.

No. 13-3194
(D.C. No. 2:11-CV-02523-JTM)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, **LUCERO**, and **MCHUGH**, Circuit Judges.

David Dickman brought suit against Secretary of Transportation Ray LaHood

under the Rehabilitation Act of 1973, claiming that the Federal Aviation Administration

("FAA") refused to hire him in retaliation for engaging in protected activities. The

district court entered summary judgment against Dickman. Exercising jurisdiction under

---

[*] This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel. This court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be cited under
the terms and conditions of 10th Cir. R. 32.1.

28 U.S.C. § 1291, we affirm.

## I

Dickman and the FAA have a long and contentious history. In 2004, Dickman voluntarily resigned from a position at the FAA's Olathe, Kansas, facility after being denied a leave of absence. Dickman filed a formal complaint of discrimination with the Department of Transportation ("DOT") in 2005, contending that FAA Human Resource Specialist Deangela Hightower did not select him for a position because of his disability. The DOT denied this claim at the administrative level. Dickman sued the FAA in federal district court. His claims were dismissed.

In 2007, while that lawsuit was pending, Dickman applied for two other positions at the FAA facility in Olathe. The first position was only open to current FAA employees and the second was open to all applicants who lived in the local commuting area. On February 4, 2008, FAA Employment Services Branch Manager Danny Sadler sent Dickman a letter informing him that he was not eligible for the first position because he was not a current FAA employee and not eligible for the second position because he did not live within the local commuting area. At the time of these applications, Dickman lived in Willis, Kansas—a town approximately 69 miles from Olathe geographically and approximately 90 miles by road. Dickman claims that he has driven that distance in an hour and thirty five minutes.

After he learned of his ineligibility, Dickman contacted FAA Human Resources Specialist Terri Craddock-Moore. According to Dickman, Craddock-Moore erroneously

informed him that his Willis address was 114 miles from the Olathe facility and that the local commuting area for the FAA Olathe facility is "generally 100 miles." On February 7, 2008, Dickman sent an email to Sadler requesting reconsideration, stating that he would reside at his relatives' house in Bonner Springs, Kansas during the work week. Bonner Springs is approximately 20 minutes from Olathe by car. Sadler denied Dickman's request in a letter dated February 25, 2008. The letter included the official FAA definition of a "commuting area," which is "one or more population centers in which people live and can reasonably be expected to travel back and forth daily to their usual place of employment."

On April 1, 2008, Dickman filed another complaint against the FAA alleging disability discrimination and retaliation in relation to the agency's determination that he was ineligible for the 2007 positions. During an Equal Employment Opportunity Commission investigation of his complaint, Sadler stated that "[w]e always use the address on the employment application to determine whether an applicant is within the commuting area" and that he "instructed Mr. Dickman that if he wanted us to consider another address in processing his application he should put that address on his application paperwork." Dickman contends that Sadler told him "if you're going to use your sister's address on any application in the future, put it on the bid announcement and it would be accepted." In July 2008 the FAA released its Report of Investigation, which concluded that FAA employees had not acted unlawfully.

That same month, the FAA posted two new vacancy announcements for a

"Management and Program Analyst" position, one for internal candidates and one for external candidates. Both announcements sought applications for a single position at the Olathe facility. Applicants for both announcements were required to reside in the local commuting area. Dickman submitted an application in response to the external announcement. Before applying, he contacted Hightower to discuss the commuting area requirement. Dickman stated that he lived 87 miles from the Olathe facility and relayed Craddock-Moore's statement that the commuting area was 100 miles. According to Dickman, after hearing about his previous conversation with Sadler, Hightower told him to put his sister's address on his application. In an affidavit, Hightower later averred that she told Dickman that as a "rule of thumb," the commuting area "usually covers a 50 mile radius." However, during her deposition, Hightower testified that there is no rule of thumb and that the statement in her affidavit was "false."

On Dickman's application for the 2008 external announcement he listed his relatives' house in Bonner Springs as his address, but noted on the application that this address was "FOR WORK PURPOSES ONLY." He did not list his Willis address on the application. Dickman also sent an email to the FAA requesting a "reasonable accommodation" for a disability. In the email, Dickman stated that he would reside at the Bonner Springs address on work days and at his Willis home on off days. Dickman did not identify a specific disability in the email but clarified during discovery he was requesting an accommodation for his father-in-law, who lives near him in Willis. Sadler responded to this request by email, stating that "[a]pplicants who reside outside the

-4-

commuting area are not eligible for consideration."

After consulting with Sadler and agency counsel, Hightower denied Dickman's application on the ground that he was not within the local commuting area. In reaching this determination, Hightower confirmed Dickman's Willis address by examining legal documents from his then-pending discrimination suit against the FAA. Hightower explained that she did not use the Bonner Springs address because she "knew that [it] was not his permanent address." The individual ultimately selected for the job was already working for the FAA and applied through the internal announcement.

Dickman then sued, alleging that the FAA's refusal to consider him for the position listed in the 2008 external announcement was retaliation for some prior complaints. The district court entered summary judgment against him. Dickman timely appealed.

## II

We review the district court's summary judgment decision de novo. Timmons v. White, 314 F.3d 1229, 1232 (10th Cir. 2003). Under Fed. R. Civ. P. 56(a), summary judgment is appropriate if there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Hornady Mfg. Co. v. Doubletap, Inc., 746 F.3d 995, 1000-01 (10th Cir. 2014). We view all facts and evidence in the light most favorable to Dickman, the party opposing summary judgment. Morris v. City of Colo. Springs, 666 F.3d 654, 660 (10th Cir. 2012).

"[T]he Rehabilitation Act, like the [Americans with Disabilities Act ("ADA")],

prohibits retaliation for protected conduct." Jarvis v. Potter, 500 F.3d 1113, 1125 (10th Cir. 2007). We apply the same standard to retaliation claims brought under the Rehabilitation Act as we do to those brought under the ADA. Id. Because Dickman does not advance any direct evidence of retaliation, we consider his claim under the "burden-shifting" framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 801-04 (1973). See Proctor v. United Parcel Serv., 502 F.3d 1200, 1207-08 (10th Cir. 2007). In the first stage of this analysis, Dickman must show that: (1) he engaged in protected activity; (2) he suffered a materially adverse action by the FAA; and (3) a causal connection exists between the protected activity and the adverse action. See id. at 1208. If Dickman establishes a prima facie case, the burden shifts and the FAA must proffer a legitimate, non-retaliatory reason for its decision. See id. The burden then shifts back to Dickman to show that the proffered reason is pretextual. See id.

The FAA neither contests Dickman's contention he engaged in a protected activity when he filed his disability discrimination lawsuit against the FAA in November 2007, nor does the FAA dispute that it took adverse action against Dickman in 2008 when Hightower determined that he was not eligible for the position of Management and Program Analyst. Moreover, the parties agree that the FAA proffered a non-retaliatory reason for its decision: its conclusion that Dickman did not reside within the local commuting area. The parties dispute whether a causal connection existed between Dickman's lawsuit and the hiring decision and whether Dickman has presented sufficient evidence of pretext. These two issues are interrelated. See id. at 1209 ("Although

-6-

[pretext] evidence is typically considered during the third phase of the McDonnell Douglas inquiry, . . . we have considered evidence of pretext in the prima facie stage of a retaliation claim."). Dickman relies on the same five categories of evidence to establish both causation and pretext: (1) the FAA's use of subjective criteria; (2) its failure to follow an unwritten policy; (3) procedural irregularities; (4) inconsistencies in the FAA's explanation; and (5) false statements from Hightower.

Dickman contends that a reasonable juror could conclude that the commuting area definition was being tailored to specifically exclude him. He notes that FAA employees provided inconsistent information about the size of the commuting area. Craddock-Moore represented that the area was generally 100 miles. Hightower presented a 50-mile limit as a "rule of thumb" before subsequently claiming that no such a rule of thumb exists and that her prior statement was false. However, none of these statements undermine, or can reasonably be said to supersede, the official FAA policy, which defines a commuting area as "one or more population centers in which people live and can reasonably be expected to travel back and forth daily to their usual place of employment."

The FAA's official policy is certainly subjective. And we generally "view with skepticism subjective evaluation methods." Garrett v. Hewlett-Packard Co., 305 F.3d 1210, 1218 (10th Cir. 2002). But subjective criteria "are not unlawful per se" and the "appropriate inference to be drawn from the presence of subjective criteria varies with the facts of the case." Bauer v. Bailar, 647 F.2d 1037, 1046 (10th Cir. 1981). The FAA

reasonably argues that a strict distance limit would be impracticable given the large number of factors that would impact commuting time. Moreover, Dickman fails to present evidence suggesting that the FAA has ever hired somebody from a community as distant as Willis to work in its Olathe facility. Although such evidence is not required, it has been considered a strong indication of pretext in other cases. See Smothers v. Solvay Chems., Inc., 740 F.3d 530, 547 (10th Cir. 2014) (explaining that in a McDonnell Douglas analysis, even a legitimate reason for a decision may be deemed pretextual if similarly situated employees were treated differently). The closest comparator offered by Dickman lived approximately 68 miles by road from the Olathe facility in a community that, unlike Willis, abuts a major highway with direct access to Olathe. Factors such as highway proximity underscore the need for a flexible definition of a commuting area.

Given this information, no reasonable juror would conclude that the FAA's use of a flexible commuter-area policy was merely pretext for retaliation. It is not our position to judge whether such a policy is "wise, fair[,] or correct," but rather to judge whether the employer "honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City & Cnty. of Denver, 365 F.3d 912, 925 (10th Cir. 2004) (quotation omitted). Dickman has not advanced evidence calling into question Sadler and Hightower's honest belief that a subjective definition of the commuting area is properly used to take into account criteria such as highway access and local commute patterns. Dickman also does not contend that it would, in fact, be reasonable to commute from Willis to Olathe.

Further, despite Dickman's focus on the explanations he received after the fact, Craddock-Moore and Sadler decided that Willis fell outside the local commuting area in February 2008, before they learned about the protected activities upon which Dickman relies.[1]  See Williams v. Rice, 983 F.2d 177, 181 (10th Cir. 1993) ("[T]o establish a causal connection, plaintiff must show that the individual who took adverse action against him knew of the employee's protected activity." (quotation omitted)).  Given this timing, we cannot see how the post-hoc statements about the commuting area constituted "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons."  Pinkerton v. Colo. Dep't of Transp., 563 F.3d 1052, 1065 (10th Cir. 2009) (quotation omitted).

Dickman also contends that a reasonable juror could find causation and pretext based on the FAA's failure to consider the Bonner Springs address listed on his application.  He points to Sadler's claim that the FAA "always use[s] the address on the

---

[1] At the time of this decision Sadler was aware of Dickman's 2005 discrimination complaint, which Dickman does not appear to rely upon to establish his prima facie case for retaliation.  Furthermore, Sadler's knowledge of Dickman's 2005 discrimination complaint, standing alone, would not support the inference that Sadler acted in retaliation when he approved of Craddock-Moore's determination.  See Meiners v. Univ. of Kan., 359 F.3d 1222, 1231 (10th Cir. 2004) (explaining that although a "six-week period between protected activity and adverse action may be sufficient, standing alone, to show causation" a "three-month period, standing alone, is insufficient").

employment application to determine whether an applicant is within the commuting area." Dickman also relies on Sadler and Hightower's instruction that if Dickman wanted another address considered, he should list it on his application.

This argument fails because Dickman twice alerted the FAA that the address listed on his 2008 application was irregular. He annotated his application with the phrase "FOR WORK PURPOSES ONLY." Sadler testified that this was the "only time I've ever experienced that in the thousands of jobs that I've either filled directly or supervised" and that the notation made it "painfully obvious that it was not his address." Moreover, Dickman indicated that his "home" was in Willis but that he "would reside" at his relatives' address in Bonner Springs.

The alleged "irregularities" asserted by Dickman plainly stem from the unusual context he himself introduced into the application process. Tellingly, Dickman does not produce evidence suggesting that any other FAA employee has been able to use an anticipated future address to satisfy a commuting-area requirement. See Jaramillo v. Adams Cnty. Sch. Dist. 14, 680 F.3d 1267, 1269 (10th Cir. 2012) ("Pretext may also be shown [if] . . . the plaintiff was treated differently from others similarly situated."). Taking "the facts as they appear to the person making the decision," Kendrick v. Penske Transp. Servs., Inc., 220 F.3d 1220, 1231 (10th Cir. 2000), we do not think it suspicious that FAA employees investigated the irregularity on Dickman's application, leading them to conclude that the listed address was not his home address (and that his actual home address was outside the local commuting area).

## III

The judgment of the district court is **AFFIRMED**.

Entered for the Court


Carlos F. Lucero
Circuit Judge