**SUSS PONTIAC–GMC, INC., a Delaware corporation, Plaintiff–Appellee,**

v.

**Richard A. BODDICKER, Defendant–Appellant.**

No. 07CA0263.

Colorado Court of Appeals, Div. III.

Nov. 26, 2008.

Wagner Law Office, Craig E. Wagner, Greenwood Village, Colorado, for Plaintiff–Appellee.

Law Offices of Gary S. Cohen, Gary S. Cohen, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge RUSSEL.

Defendant, Richard A. Boddicker, appeals from the trial court's summary judgment in favor of plaintiff, Suss Pontiac–GMC, Inc. We affirm and remand with directions.

## I. Background

Suss leased real estate from Boddicker under a contract that contained a purchase option. The contract stated that Suss could exercise the option by notifying Boddicker of

its intent to buy the property. The contract also stated that, if Suss did not exercise the option by June 1, 2006, the rental provisions would automatically renew for five years.

The contract contained the following notice provision:

Any notice to Lessor provided for in this Lease shall be given by mailing such notice by certified mail, return receipt requested, addressed to Lessor at: [address].

Any such notice shall be deemed given on the date of mailing.

On May 25, 2006, Suss sent notice by first class mail of its intent to buy the property. On May 31, Boddicker replied, through counsel, that he had received the letter. Later, however, Boddicker declined to honor the option on the ground that Suss had failed to send its notice by certified mail.

Suss sued for specific performance of the purchase option. Boddicker counterclaimed that Suss had defaulted on rent payments required under the automatic renewal provision. Both parties moved for summary judgment. The trial court held that Suss had properly exercised the option and granted summary judgment in Suss's favor.

## II. Standard of Review

A court may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999). The court must give the nonmoving party the benefit of all inferences that reasonably may be drawn from the undisputed facts. *HealthONE v. Rodriguez*, 50 P.3d 879, 887 (Colo.2002). We review de novo. *Cyprus Amax Minerals Co. v. Lexington Ins. Co.*, 74 P.3d 294, 298–99 (Colo.2003).

## III. Discussion

Boddicker contends that the trial court erred in granting summary judgment in Suss's favor. We uphold the trial court's ruling.

## A. Method of Delivery

■ Should courts enforce an option that has been timely exercised by written notice when the contract states that notice shall be sent by "certified mail, return receipt requested," but the notice is delivered another way?

The answer is yes. When faced with this question, the great majority of courts have held that the option should be enforced if the alternative delivery method results in actual notice, timely received. *See Osprey L.L.C. v. Kelly–Moore Paint Co.*, 984 P.2d 194, 197 n. 4 (Okla.1999) (collecting cases).

Three potential rationales support this result. First, an alternative delivery method may satisfy the parties' intent, even though it differs from the literal meaning of the contract language. Second, even if the alternative delivery method does not satisfy the contract, the deviation may be overlooked as inconsequential. Third, in some cases, a party may have waived the right to enforce the notice provision.

Here, the first rationale is sufficient to support the trial court's ruling.

Although offerors may insist on a particular method of acceptance, Restatement (Second) of Contracts § 30 cmt. a, they rarely do so as a practical matter. *See id.* § 30 cmt. b ("Insistence on a particular form of acceptance is unusual."). The reason is simple: the method of acceptance generally has no effect on the substance of the agreement.

Because they are aware of this reality, courts look closely at contract terms that arguably restrict the method of acceptance. Very often, they find that the offeror intended something else:

[F]requently in regard to the details of methods of acceptance, the offeror's language, if fairly interpreted, amounts merely to a statement of a satisfactory method of acceptance, without positive requirement that this method shall be followed.

*Illustrations:* 1. A mails an offer to B in which A says, "I must receive your acceptance by return mail." An acceptance sent within a reasonable time by any other means, which reaches A as soon as a letter

sent by return mail would normally arrive, creates a contract on arrival.

*Id.* § 60 cmt. a.

█ This interpretive principle applies with special force when courts examine contracts that contain options to renew leases or to buy leased property. These options are different from other offers in that they are shaped not by the offeror alone but by both parties in negotiation. Therefore, when interpreting option contracts, courts cannot focus solely on whether the offeror intended to restrict the method of acceptance; they must consider the intent and reasonable expectations of both parties. *See Hoang v. Assurance Co.,* 149 P.3d 798, 801 (Colo.2007) (goal of contract interpretation is to give effect to the intent and reasonable expectations of the parties).

What do the parties intend when they agree to send a notice by certified or registered mail? In most cases, they intend nothing more than to forestall disputes about timeliness and actual delivery. *See Gerson Realty Inc. v. Casaly,* 2 Mass.App.Ct. 875, 316 N.E.2d 767, 767 (1974) ("The function of a requirement that notice be transmitted by registered mail is to provide a means of resolving disputes as to the fact of delivery of the notice."); *cf. Blue v. Boss,* 781 P.2d 128, 130 (Colo.App.1989) (legislative purpose in requiring notice by registered mail is to fix an effective date for the calculation of the statutory deadline; first class mail is sufficient when the parties agree that notice was timely filed).

Thus, even in jurisdictions that require strict compliance with the terms of an option contract, courts hold that an alternative delivery method is sufficient if it serves the same function as the method specified. *See Univ. Realty & Dev. Co. v. Omid–Gaf, Inc.,* 19 Ariz.App. 488, 508 P.2d 747, 749 (1973) ("While it is true that there must be strict compliance with the terms of an option agreement, generally speaking any method of transmission of notice of renewal of a lease may be employed which is effective to bring such notice home to the lessor and serves the same function and purpose as the authorized method."); *Osprey,* 984 P.2d at 198 (the majority of courts "generally recognize that, despite the contention that there must be strict compliance with the notice terms of a lease option agreement, use of an alternative method does not render the notice defective if the substituted method performed the same function or served the same purpose as the authorized method"); *see also Fletcher v. Frisbee,* 119 N.H. 555, 404 A.2d 1106, 1109 (1979) (although the contract required that notice be sent by registered mail, the use of regular mail was sufficient because it served the same function and purpose as the authorized method); *243 So. Harrison St. Corp. v. Ogust,* 113 N.J.Super. 74, 272 A.2d 578, 579–80 (1971) (although the contract stated that notice was to be sent by registered mail, notice by certified mail was sufficient to renew a lease because timely receipt was undisputed); *Gerson,* 316 N.E.2d at 767–68 (same); *Gen. Tel. Co. of Nw., Inc. v. C–3 Assocs.,* 32 Wash.App. 550, 648 P.2d 491, 492 (1982) (although option terms must be strictly complied with, hand delivery was sufficient to renew lease where it was undisputed that notice was timely received).

Conversely, courts generally disallow alternative delivery methods that fail to resolve questions about timeliness and actual receipt. *See, e.g., In re Joyner,* 74 B.R. 618, 623 (Bankr.M.D.Ga.1987) ("If the provisions of the lease agreement had been complied with, the problem of proving that the notice had actually been sent on time and received would have been eliminated."); *Seven Fifty Main St. Assocs. Ltd. P'ship v. Spector,* 5 Conn.App. 170, 497 A.2d 96, 98–99 (1985) (use of ordinary mail was insufficient where trial court found that the landlord did not receive the letter); *W. Tire, Inc. v. Skrede,* 307 N.W.2d 558, 563 (N.D.1981) (use of ordinary mail was insufficient when the landlord did not receive the letter).

Here, the parties did not attach special significance to the method of delivery. *Cf.* Restatement (Second) of Contracts, § 60 cmt. a., illustration 3 ("A offers to sell his land to B on certain terms, also saying: 'You must accept this, if at all, in person at my office at ten o'clock tomorrow.' B's power is strictly limited to one method of acceptance.") The contract language expresses nothing more than the reasonable intent to

avoid potential disputes about timeliness and actual receipt. *See Jacob & Youngs, Inc. v. Kent,* 230 N.Y. 239, 129 N.E. 889, 891 (1921) (Cardozo, J.) ("Intention not otherwise revealed may be presumed to hold in contemplation the reasonable and probable. If something else is in view, it must not be left to implication."). And it is undisputed that Suss's alternative delivery method fulfilled this intent: Boddicker received written notice, and acknowledged that fact, before the deadline expired.

Boddicker argues that we cannot excuse Suss's alternative delivery method under the oft-stated rule that an "option must be exercised in strict compliance with its terms." *See, e.g., Karakehian v. Boyer,* 900 P.2d 1273, 1276 (Colo.App.1994), *aff'd in part and rev'd in part on other grounds,* 915 P.2d 1295 (Colo.1996).

Boddicker's authorities are distinguishable. It is one thing to insist on strict compliance with terms that require tender of payment, written notice, and timeliness. *See, e.g., Miller v. Carmody,* 152 Colo. 353, 358–59, 384 P.2d 77, 79–80 (1963) (where option required tender of payment, notice without tender was insufficient); *Karakehian,* 900 P.2d at 1276 (oral exercise is not valid if the agreement calls for written exercise); *Trueman–Aspen Co. v. N. Mill Inv. Corp.,* 728 P.2d 343, 344–45 (Colo.App.1986) (court will not intervene when a party negligently fails to comply with the deadline for exercising an option). It is quite another to insist on strict compliance with a particular delivery method when the alternative method confers the same benefit. *See Newcomb v. Schaeffler,* 131 Colo. 56, 62, 279 P.2d 409, 412 (1955) (defining substantial compliance); *MER Props.-Salisbury v. Golden Palace, Inc.,* 95 N.C.App. 402, 382 S.E.2d 869, 870–72 (1989) (excusing strict compliance when it is undisputed that notice was timely received).

We conclude that Suss effectively exercised the option by sending notice via first class mail. Under the circumstances here, the alternative delivery method satisfied the reasonable intent of the parties and thus complied with the contract.

In light of our conclusion, we need not address Suss's assertion that Boddicker waived his right to enforcement of the notice provision.

### B. Counteroffer

Boddicker argues that Suss's letter contained a counteroffer instead of an unconditional exercise of the purchase option. This argument is refuted by the language of the letter. *See Keith v. Kinney,* 140 P.3d 141, 146 (Colo.App.2005) (interpretation of a written document is a question of law).

### IV. Attorney Fees on Appeal

Both parties request their appellate attorney fees under a fee-shifting provision in the lease. We deny Boddicker's request and conclude that, as the prevailing party, Suss is entitled to an award of reasonable attorney fees incurred in defending this appeal. *See Zambruk v. Perlmutter 3rd Generation Builders, Inc.,* 32 Colo.App. 276, 281, 510 P.2d 472, 476 (1973).

The judgment is affirmed, and the case is remanded so that the trial court may determine and award the reasonable attorney fees that Suss incurred on appeal.

Judge CASEBOLT and Judge J. JONES concur.