**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 10, 2018**

**Elisabeth A. Shumaker**
**Clerk of Court**

## UNITED STATES COURT OF APPEALS

## FOR THE TENTH CIRCUIT

_____

DIGITAL SATELLITE CONNECTIONS,
LLC; KATHY KING,

    Plaintiffs - Appellants,

v.

DISH NETWORK CORPORATION;
DISH NETWORK, LLC; DISHNET
SATELLITE BROADBAND, LLC,

    Defendants - Appellees.

_____

DIGITAL SATELLITE CONNECTIONS,
LLC; KATHY KING,

    Plaintiffs - Appellants,

v.

DISH NETWORK CORPORATION;
DISH NETWORK, LLC; DISHNET
SATELLITE BROADBAND, LLC,

    Defendants - Appellees.

No. 15-1373
(D.C. No. 1:13-CV-02934-REB-CBS)
(D. Colo.)

No. 17-1110
(D.C. No. 1:13-CV-02934-REB-CBS)
(D. Colo.)

_____

## ORDER AND JUDGMENT[*]
_____

Before **TYMKOVICH**, Chief Judge, **BACHARACH** and **MORITZ**, Circuit Judges.
_____

    [*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. *See* Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

Digital Satellite Connections, LLC (DSC) and Kathy King (collectively, the plaintiffs) appeal the district court's orders granting summary judgment to defendants Dish Network Corporation, Dish Network, LLC, and Dishnet Satellite Broadband, LLC (collectively, Dish) on, inter alia, Dish's breach-of-contract counterclaim. The plaintiffs also challenge the district court's order requiring specific performance from DSC as a remedy for that breach. In doing so, the plaintiffs primarily attempt to demonstrate the unreliability of certain summary-judgment evidence. But as the plaintiffs repeatedly conceded below, the district court didn't actually rely on this evidence to begin with. And to the extent the plaintiffs instead address the summary-judgment evidence the district court *did* rely on, their arguments fail. So too do the plaintiffs' arguments that the district court erred in requiring specific performance from DSC. Accordingly, we affirm.

## Background[1]

Doing business under the name "Digital Satellite Connections," Donald King began providing internet services and selling and installing satellite dishes in the 1990s.[2] App. vol. 2, 25. According to Donald's sister, plaintiff Kathy King,[3] Donald thought it would be a good idea to combine the words "DISH" ("a generic, shorthand

---

[1] Because this is an appeal from an order granting summary judgment to Dish, "we view all evidence and draw reasonable inferences therefrom in the light most favorable to" the plaintiffs. *Proctor v. UPS*, 502 F.3d 1200, 1205 (10th Cir. 2007).

[2] Digital Satellite Connections—the sole proprietorship that Donald King created and operated—isn't the same entity as DSC. DSC is a plaintiff in this action; Digital Satellite Connections is not.

[3] To avoid ambiguity, we refer to Kathy King by her last name and to Donald King by his first name.

term for a satellite dish") and "NET" ("a shorthand term for the [i]nternet") into a single name for his business: "DISHNET." *Id.* Donald conducted business under that name and "operated a website at dishnet.com." *Id.* At some point, Donald became a retailer for Dish's predecessor, EchoStar Satellite LLC (EchoStar).

Donald died in October 2000. At that point, King took over his business and continued to use the DISHNET name. Four years later, an EchoStar representative contacted King and asked whether she "would be willing to sign the dishnet.com domain over to Echo[S]tar." *Id.* at 29. King declined to sign over the domain name, and instead "continued to increase [her] promotion of the DISHNET mark." *Id.*

In 2010, King signed an agreement with Dish (the Retailer Agreement) that authorized King to market Dish's programming services. Under the terms of the Retailer Agreement, which covered the period between December 31, 2010, and December 31, 2012, Dish agreed that any notices it gave King pursuant to the agreement would be made in writing and mailed to King at the physical address listed on the Retailer Agreement's first page. The Retailer Agreement also incorporated by reference a separate agreement (the Trademark License Agreement) that governed King's use of Dish's trademarks. Under the Trademark License Agreement, Digital Satellite Connections agreed (1) not to hold itself out as Dish or to obtain, register, use, acquire, or submit an application for any name, trademark, or service mark that Dish deemed to be confusingly similar to any of its marks; and (2) to immediately transfer to Dish, upon Dish's request, any such mark. Finally, the Trademark License Agreement contained a clause (the Survival Clause) stating that these obligations

3

would survive indefinitely—even after the expiration or termination of the Retailer Agreement.

In 2012, Dish launched an internet service called dishNET. According to a declaration from Dish employee Bruce Werner (the Werner Declaration), Dish employees telephoned King in 2012 in conjunction with the launch of dishNET and demanded—in what we refer to as the 2012 Demand—that King transfer the dishnet.com domain name to Dish.[4]

But King didn't transfer the DISHNET mark or the dishnet.com domain name to Dish. Instead, on the day the Retailer Agreement expired, she filed incorporation papers for DSC and then assigned to DSC all of Digital Satellite Connections' trademarks, service marks, trade names, and domain names. The plaintiffs then brought the underlying suit against Dish, seeking to enjoin it from using the DISHNET mark and alleging various claims, including trademark infringement and breach of contract.

Two days later, on January 31, 2013, Dish sent an email to King's attorney and—in what we refer to as the 2013 Demand—stated that King must immediately transfer to Dish "any and all [t]rademarks and/or [i]dentifying [c]ommunications [i]nformation, owned[,] reserved, filed, registered, etc." by King, Digital Satellite Connections, or any of Digital Satellite Connections' affiliates. App. vol. 2, 113.

---

[4] The plaintiffs deny that this phone call took place. For purposes of this appeal, we assume that it didn't. *See Proctor*, 502 F.3d at 1205.

4

Unlike the existence of the 2012 Demand (which King disputed below and continues to dispute on appeal), King has never disputed the existence of the 2013 Demand.

In addition to making the 2013 Demand, Dish also asserted several counterclaims against the plaintiffs, including counterclaims for breach of contract and trademark infringement. Both sides then moved for summary judgment. In response, the district court granted summary judgment to Dish on all of the plaintiffs' claims. It also granted summary judgment to Dish "on the first three elements of" Dish's counterclaim for breach of contract (Counterclaim 1) and "the first two elements of [Dish's] trademark claims" (Counterclaims 2 and 3). App. vol. 1, 207. The district court denied the plaintiffs' motion for summary judgment in its entirety and also denied the balance of Dish's motion for summary judgment.

In ruling on the parties' motions for summary judgment, the district court first noted that "[n]early all of the claims and counterclaims hinge[d] on a determination of which party ha[d] the legal right to own and use the trademark DISHNET and the domain name dishnet.com." *Id.* at 201. And in concluding that Dish owned those rights, the district court (1) ruled that the Trademark License Agreement required King to transfer to Dish the DISHNET trademark and dishnet.com domain name upon Dish's request; (2) cited the Werner Declaration, which described the alleged 2012 Demand; (3) acknowledged that the plaintiffs challenged the evidentiary value of the Werner Declaration;[5] and then (4) noted that the plaintiffs did *not* deny the

---

[5] For instance, the plaintiffs argued that the Werner Declaration wasn't based on Werner's personal knowledge and that it contained inadmissible hearsay.

existence of the 2013 Demand. Finally, after citing the Survival Clause, the district court ruled that the Trademark License Agreement's requirements remained in effect at the time of the 2013 Demand. Thus, the district court concluded, Dish was entitled to summary judgment on the first three elements of Counterclaim 1: "(1) the existence of a contract; (2) performance by the party claiming breach; [and] (3) failure to perform by the other party." App. vol. 1, 203. But the district court ruled that "the undisputed facts in the record" didn't establish the fourth element of Counterclaim 1: "what damages, if any, Dish suffered as a result of the breach." *Id.*

Dish then filed a second motion for summary judgment on Counterclaim 1. In that motion, Dish relinquished any request for actual damages. Instead, it asked the district court to award Dish specific performance from the plaintiffs by ordering them to cease their "use of the DISHNET trademark and transfer[] dishnet.com, dishnetworks.com, and any other 'dish' domain names to [Dish]." *Id.* at 222.

The district court granted Dish summary judgment on Counterclaim 1. And it ordered specific performance from King. But the district court refused to order specific performance from DSC. Dish then moved to reconsider, asking the district court to expand its award of specific performance to apply to DSC.

The district court granted Dish's motion to reconsider. In doing so, it recognized that DSC wasn't a party to the Retailer Agreement or the Trademark License Agreement. But, the district court explained, it could nevertheless grant an award of specific performance against DSC because DSC wasn't a "bona fide

6

purchaser for value" of the DISHNET trademark and the dishnet.com domain name. App. vol. 2, 103.

The district court then entered judgment on March 24, 2017, and later certified its judgment as final. *See* Fed. R. Civ. P. 54(b) (authorizing district court to "direct entry of a final judgment as to one or more, but fewer than all, claims . . . if the court expressly determines that there is no just reason for delay"). The plaintiffs appeal.[6]

**Analysis**

## I.  The Orders Granting Summary Judgment

In general, we review de novo the district court's orders granting summary judgment to Dish. *See Eisenhour v. Weber Cty.*, 744 F.3d 1220, 1226 (10th Cir. 2014). But to the extent the plaintiffs challenge the district court's underlying evidentiary rulings, we review only for abuse of discretion. *See Jones v. Barnhart*, 349 F.3d 1260, 1270 (10th Cir. 2003).

---

[6] Despite the fact that several of Dish's counterclaims remained unresolved at the time, the plaintiffs filed an initial notice of appeal on September 30, 2015. That notice of appeal designated, among other things, the district court's orders granting summary judgment to Dish and awarding it specific performance from King. We docketed that appeal as Appeal No. 15-1373 but abated it until August 18, 2016, pending resolution of Dish's motion to reconsider. We subsequently docketed the plaintiffs' appeal from the district court's March 24, 2017 order as Appeal No. 17-1110. The plaintiffs' notice of appeal in Appeal No. 17-1110 also lists the orders appealed from in Appeal No. 15-1373. In light of the district court's Rule 54(b) certification, we now have jurisdiction to review all of the challenged orders. *See Mock v. T.G. & Y. Stores Co.*, 971 F.2d 522, 527 (10th Cir. 1992) ("The general rule is that interlocutory rulings merge into the final judgment of the court and become appealable only once a final judgment has been entered.").

### A. The 2012 Demand

The plaintiffs' primary argument on appeal is that the district court abused its discretion in relying on evidence of the alleged 2012 Demand. In particular, the plaintiffs argue that (1) "[n]othing in the Werner Declaration" demonstrates that Werner based his statements about the alleged 2012 Demand on his own personal knowledge, Aplt. Br. 17-1110, 42; (2) the Werner Declaration contains inadmissible hearsay; (3) the Werner Declaration is contradicted by representations that Dish made in other filings; (4) the plaintiffs controverted the Werner Declaration with evidence of their own; and (5) the Werner Declaration doesn't allege that the 2012 Demand was made in writing and sent to the address listed on the first page of the Retailer Agreement. Based on these assertions, the plaintiffs argue that the Werner Declaration wasn't "proper summary judgment evidence." Aplt. Br. 17-1110, 33.

But even if we assume the truth of the five assertions listed above, this assumption merely demonstrates that *if* the district court relied on evidence of the 2012 Demand, *then* the district court abused its discretion. To prevail on appeal, the plaintiffs must also show that the district court did, in fact, rely on evidence of the 2012 Demand. And they can't make this showing. Instead, as Dish points out, the district court relied on evidence of the 2013 Demand—not the 2012 Demand—in granting its motions for summary judgment.

It's true that the district court didn't expressly disavow any reliance upon the 2012 Demand. Nor did it expressly specify it was instead relying on the 2013 demand. But that is clearly the impetus of its order. The district court referenced both

8

(1) Dish's evidence of the 2012 Demand and (2) the plaintiffs' objections to that evidence. And significantly, rather than address those objections, the district court simply pointed out that King didn't deny the existence of the 2013 Demand. Then, after citing the Survival Clause, the district court ruled that the Trademark License Agreement's requirements remained in effect at the time of the 2013 Demand.

If the district court were relying on evidence of the 2012 Demand—a demand that allegedly occurred before the Retailer Agreement expired—the court would have had no reason to point out that the Trademark License Agreement's requirements survived the expiration of that agreement and therefore remained in effect at the time of the 2013 Demand. Thus, we conclude that in granting summary judgment to Dish, the district court opted to bypass the plaintiffs' numerous objections to Dish's reliance on the 2012 Demand and instead rely solely upon evidence of the 2013 Demand, which the district court found sufficient to establish Dish's "legal right to own and use the trademark DISHNET and the domain name dishnet.com."[7] App. vol. 1, 201.

---

[7] The plaintiffs characterize the district court's ruling that Dish owns a protectable trademark in DISHNET as "improper." Aplt. Br. 17-1110, 57. In support, they allege that Dish never asked the district court to make such a finding. Instead, according to the plaintiffs, Dish "only alleged ownership of DISH and/or DISH NETWORK." *Id.* But the plaintiffs' discussion of this point comprises a mere three sentences; they fail to cite any legal authority that might support it; and indeed, they concede that "the law is unclear in this area." *Id.* at 56. Accordingly, we treat this argument as waived and decline to consider it. *See* Fed. R. App. P. 28(a)(8)(A) (requiring argument section of appellant's brief to contain "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies"); *Bronson v. Swensen*, 500 F.3d 1099, 1105 (10th Cir. 2007) ("But these cursory statements, without supporting analysis and case law, fail

Despite these clear indications of the district court's rationale, the plaintiffs maintain that "the district court erroneously relied upon" the 2012 Demand, Aplt. Br. 17-1110, 39; that "[t]he importance of the district court's consideration of" the 2012 Demand "cannot be overstated," *id.* at 38; that the district court's ruling below "turned on" the 2012 Demand, *id.* at 16; and that "[t]he outcome of this appeal" likewise "turns on whether" evidence of the 2012 Demand "was proper summary judgment evidence," *id.* at 32.

These assertions on appeal are surprising, if not disingenuous. Although Dish fails to point out as much, our review of the record reveals that the plaintiffs expressly and repeatedly staked out the opposite position below. For instance, in asking the district court to reconsider its first summary-judgment order, the plaintiffs asserted, "In finding that [King] breached, the [district court] appears to have relied exclusively on [the 2013 Demand]." App. vol. 1, 213 n.5. Likewise, in their reply to Dish's response to their motion to reconsider, the plaintiffs again insisted that the district court "appears to have relied *only* on [the 2013 Demand]." App. vol. 2, 38 (emphasis in original).

In light of these repeated concessions and our own reading of the district court's analysis, we conclude that the district court didn't rely on evidence of the 2012 Demand in granting Dish's motions for summary judgment. Thus, we need not address the plaintiffs' arguments about the 2012 Demand. *Cf. Nixon v. City & Cty. of*

---

to constitute the kind of briefing that is necessary to avoid application of the [waiver] doctrine.").

10

*Denver*, 784 F.3d 1364, 1366 (10th Cir. 2015) (explaining that appellant's "first task" is "to explain what was wrong with the reasoning that the district court relied on in reaching its decision," rather than "argu[ing] against positions not adopted by the district court"); *id.* at 1369 (declining to address arguments about legal authority that district court "in no way relied on" below).

**B.      The 2013 Demand**

As discussed above, the plaintiffs' primary argument on appeal is that the district court erred in relying on the 2012 Demand. But scattered throughout their opening brief are a few cursory suggestions that, to the extent the district court instead relied on the 2013 Demand, it erred in doing so.[8] In particular, the plaintiffs assert that (1) by the time Dish made the 2013 Demand, the Retailer Agreement had expired; (2) Dish didn't mail the 2013 Demand to King at the address listed on the first page of the Retailer Agreement; and (3) it's unclear whether the 2013 Demand "was for 'transfer of the [DISHNET] trademark and domain name'" specifically. Aplt. Br. 17-1110, 40 (quoting App. vol. 1, 199).

Yet to the extent the plaintiffs argue that the Retailer Agreement expired before Dish made the 2013 Demand, they fail to acknowledge—let alone challenge—the district court's reason for rejecting this argument below: the district court ruled that Dish's right to enforce the Trademark License Agreement survived the 2012

---

[8] The plaintiffs advance additional challenges to the district court's reliance on the 2013 Demand in their reply brief. But arguments raised for the first time in a reply brief are waived. *See M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009). Thus, we decline to address these arguments.

11

expiration of the Retailer Agreement under the Survival Clause.[9] Thus, because the plaintiffs' "opening brief contains nary a word to challenge" the basis for the district court's ruling, they have waived any challenge to that ruling. *Nixon*, 784 F.3d at 1369 (summarily affirming order dismissing appellant's claim because appellant failed to challenge district court's basis for that ruling).

In any event, we agree with the district court that the plaintiffs' obligations under the Trademark License Agreement survived the 2012 expiration of the Retailer Agreement. The plain language of the Survival Clause unambiguously states as much. And we must therefore enforce that plain language. *See USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997) ("[W]ritten contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language.").[10] Thus, even if we reached the plaintiffs' argument on this point, we would reject it.

The same analysis applies to the plaintiffs' assertion that the district court erred in relying on the 2013 Demand because Dish failed to mail that demand to the address listed on the first page of the Retailer Agreement. That is, the plaintiffs again fail to acknowledge or challenge the grounds the district court provided for rejecting this argument below; i.e., that the Retailer Agreement's address requirement didn't apply to requests that—like the 2013 Demand—were made pursuant to the

---

[9] The plaintiffs briefly challenge the district court's reliance on the Survival Clause in their reply brief. But the scant two sentences they dedicate to this point are too little, too late. *See M.D. Mark, Inc.*, 565 F.3d at 768 n.7.

[10] The district court concluded that Colorado law controls, and the plaintiffs don't suggest otherwise on appeal.

Trademark License Agreement. So the plaintiffs have again waived any argument on this point. *See Nixon*, 784 F.3d at 1369. And once again, even if we overlooked the plaintiffs' deficient briefing, their argument fails on the merits. Assuming the district court erred in concluding Dish wasn't required to send the 2013 Demand to the physical address listed in the Retailer Agreement, the fact remains that the plaintiffs don't dispute King *actually received* the email that contained the 2013 Demand. Thus, this "alternative delivery method" satisfied "the parties' intent" and therefore complied with the Retailer Agreement's terms. *Suss Pontiac-GMC, Inc. v. Boddicker*, 208 P.3d 269, 270 (Colo. App. 2008); *cf. id.* at 271–72 (explaining that when parties "agree to send a notice by certified or registered mail," they typically "intend nothing more than to forestall disputes about timeliness and actual delivery"; holding that alternative delivery method satisfied this intent, "and thus complied with the contract," because defendant actually received timely written notice).

That leaves only the plaintiffs' assertion that the 2013 Demand was insufficiently specific to trigger their obligations under the Trademark License Agreement. As the plaintiffs point out, the email containing the 2013 Demand doesn't specifically refer to DISHNET or to the dishnet.com domain name. Thus, they contend, the email didn't trigger their obligation to transfer.

We decline to reach this argument. Notably, the plaintiffs fail to provide a citation to the record demonstrating that the district court ruled on this argument below. Indeed, the plaintiffs fail to demonstrate that they ever advanced the argument to begin with. *See* 10th Cir. R. 28.2(C)(2) ("For each issue raised on appeal, all briefs

13

must cite the precise reference in the record where the issue was raised and ruled on."); *Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."). Moreover, the plaintiffs also fail to argue for plain error on appeal. Thus, they have waived this argument. *See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc.*, 82 F.3d 1533, 1540 n.3 (10th Cir. 1996) (assuming, in absence of record citation, that appellant failed to raise argument below); *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1131 (10th Cir. 2011) ("[T]he failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court.").

Moreover, even if we agreed to reach this argument, we would reject it. That's because the plaintiffs implicitly conceded below that the 2013 Demand triggered their obligation to transfer the dishnet.com domain name. Specifically, in responding to Dish's motion for summary judgment, the plaintiffs (1) cited Dish's allegation that the 2012 Demand was for "transfer [of] the dishnet.com domain name"; (2) argued that evidence of the 2012 Demand was unreliable; and then (3) stated, "To be clear, [the plaintiffs do] not deny that after this suit was filed *in 2013*, DISH made a written demand." App. vol. 1, 139. Implicit in the plaintiffs' juxtaposition of evidence of the 2012 Demand for the domain name (which the plaintiffs objected to) and evidence of the 2013 Demand (to which they had no objection) is an acknowledgment that the 2013 Demand was—like the 2012 Demand—*also* for the domain name. Thus, in light

14

of this implicit concession, the district court didn't err in concluding that the 2013 Demand was sufficiently specific to trigger the plaintiffs' transfer obligations.

## C.     Conclusion

The plaintiffs fail to establish that the district court relied on evidence of the 2012 Demand in resolving the parties' summary-judgment motions. What's more, they repeatedly conceded below that it didn't. Thus, their challenges to that evidence are incapable of demonstrating reversible error. For that reason, we need not and do not address them. Likewise, in light of the plaintiffs' numerous briefing deficiencies, we treat as waived and decline to address the plaintiffs' challenges to the district court' reliance on the 2013 Demand. Finally, we note that even if we agreed to reach these arguments, they would fail on the merits. Accordingly, we affirm the district court's orders granting summary judgment to Dish.[11]

## II.     The Order Requiring Specific Performance from DSC

Even assuming that Dish is entitled to summary judgment on Counterclaim 1, the plaintiffs argue that the district court erred in ordering specific performance from DSC as a remedy for King's breach of contract. We review the district court's award

---

[11] The plaintiffs assert that we should not only reverse the district court's orders granting summary judgment to Dish, but that we should remand with directions to enter summary judgment for plaintiffs on their trademark-infringement claim. But this assertion turns on the plaintiffs' argument that "there is no evidence that [Dish] demanded the mark." Aplt. Br. 17-1110, 52. For the reasons discussed above, we cannot agree. Accordingly, we decline to grant the plaintiffs summary judgment on their trademark-infringement claim.

15

of specific performance for abuse of discretion.[12] *See Koch v. Koch*, 903 F.2d 1333, 1335 (10th Cir. 1990). Under that deferential standard, we won't "disturb" the district court's ruling unless "it was based on a clearly erroneous finding of fact or an erroneous conclusion of law or manifests a clear error of judgment." *Cartier v. Jackson*, 59 F.3d 1046, 1048 (10th Cir. 1995).

In granting Dish's request to extend its award of specific performance, the district court first acknowledged that DSC wasn't "a party to" the Retailer Agreement. App. vol. 2, 102. And as the plaintiffs point out, the general rule is that "specific performance will not be allowed when it depends for its performance on the act or assent of a person who is not a party to the agreement" at issue. *Chandler Trailer Convoy, Inc. v. Rocky Mountain Mobile Home Towing Servs., Inc.*, 552 P.2d 522, 523 (Colo. App. 1976). But the district court then cited an exception to this general rule: "[S]pecific performance may be granted against a subsequent purchaser who is not a bona fide purchaser for value, even though the subsequent purchaser is not a party to the contract at issue." App. vol. 2, 102; *accord Chandler*, 552 P.2d

---

[12] The plaintiffs characterize the district court's award as a preliminary injunction. But as Dish points out, "there was nothing 'preliminary' about" it: the district court ruled that Dish was entitled to summary judgment on Counterclaim 1 and then ordered specific performance from DSC as a remedy. Aplee. Br. 17-1110, 3; *cf. Schrier v. Univ. of Colo.*, 427 F.3d 1253, 1258 (10th Cir. 2005) (explaining narrow purpose of preliminary injunction). In asserting otherwise, the plaintiffs insist that "the district court's orders fall within the definition of a 'preliminary injunction' because they enjoin behavior and command performance, yet no 'final judgment' has been entered." Rep. Br. 15-1373, 19. This may have been true at one point in the litigation. But it's no longer the case; the plaintiffs concede that the district court has now entered final judgment. Because the plaintiffs fail to demonstrate that the district court issued a preliminary injunction, we decline to consider their argument that it erred in doing so.

at 524. And the district court ruled that the *Chandler* exception applies here because DSC wasn't "a bona fide purchaser for value" of "the DISHNET trademark, the dishnet.com domain name, and the related trademarks and domain names." App. vol. 2, 103. Thus, the district court ordered specific performance from DSC.

The plaintiffs assert this was error. First, they argue that the *Chandler* exception doesn't apply here because (1) it only applies "to competing claims to property involving a subsequent '*purchaser*'" and (2) DSC wasn't a "'*purchaser*' of anything."[13] Aplt. Br. 17-1110, 55 (emphases added).

The plaintiffs are correct that *Chandler* states, "[S]pecific performance may be granted against a subsequent *purchaser* who is not a bona fide purchaser for value." 552 P.2d at 524 (emphasis added). But whether the subsequent party must be a "purchaser" at all simply wasn't at issue in *Chandler*. *Id.* Moreover, the plaintiffs don't make any argument as to why this distinction makes any difference. And we

---

[13] The plaintiffs actually assert that the *Chandler* exception doesn't apply because *Dish* wasn't a "'purchaser' of anything." Aplt. Br. 17-1110, 55. We opt to treat this reference to Dish—rather than DSC—as a typo in order to reconcile the argument that the plaintiffs present on appeal with the one they advanced below. There, the plaintiffs argued that because *DSC* wasn't "a 'purchaser' in the first place," the district court's *Chandler* "analysis [was] misplaced from the start." App. vol. 2, 92. Likewise, they insisted that the Colorado Court of Appeals' decision in *Chandler* was "irrelevant" because there was "no evidence that [*DSC*] was a 'purchaser' of assets . . . in the first place." *Id.* at 95 (emphasis added). Accordingly, we assume this is the argument they intend to advance on appeal and construe it as such. To the extent that the plaintiffs are instead attempting to argue on appeal that the *Chandler* exception somehow doesn't apply because *Dish* didn't purchase anything, they have waived that argument by failing to raise it below and then failing to make a plain-error argument on appeal. *See Richison*, 634 F.3d at 1131 ("[T]he failure to argue for plain error and its application on appeal . . . marks the end of the road for an argument for reversal not first presented to the district court.").

can't see why it would. Regardless of whether the subsequent party at issue is a purchaser, the recipient of a gratuitous transfer, or a sneak thief, equitable principles allow a court to order that subsequent party to transfer the property at issue to the party that originally contracted for it unless the subsequent party is a bona fide purchaser for value. *See Harris Tr. & Sav. Bank v. Salomon Smith Barney, Inc.*, 530 U.S. 238, 251 (2000) (explaining that common-law equitable principles give courts power "to reach the property either in the hands of the original wrongdoer, or in the hands of *any subsequent holder*, until a purchaser of it in good faith and without notice acquires a higher right" (emphasis added) (quoting *Moore v. Crawford*, 130 U.S. 122, 128 (1889))). Thus, the fact that DSC didn't purchase the property at issue from King doesn't mean that the district court erred in applying the *Chandler* exception. Indeed, the fact that DSC didn't purchase the property only serves to bolster the district court's ruling. *See id.* (suggesting that *only* bona fide purchaser for value can ever "acquire[] a higher right" to property that is sufficient to preclude "a court of equity" from "reach[ing] the property" and awarding it to party that originally contracted for it (quoting *Moore*, 130 U.S. at 128)).

Finally, in a related argument, the plaintiffs assert that the district court erred in applying the *Chandler* exception because whether DSC had notice of Dish's claim to the property at issue "was a disputed fact." Aplt. Br. 17-1110, 56; *see also Himes v. Schiro*, 711 P.2d 1281, 1283 (Colo. App. 1985) ("A bona fide purchaser is one who takes property upon payment of value, in good faith, and lacking notice of any defect in the title."). But even assuming that DSC lacked notice of Dish's claim, that

18

fact wouldn't necessarily insulate DSC from an order to perform. That's because the plaintiffs have repeatedly conceded that DSC wasn't "a 'purchaser' in the first place." App. vol. 2, 92. And as we explain above, only a bona fide *purchaser* for value would fall outside the district court's equitable reach. *See Harris*, 530 U.S. at 251. Accordingly, even if the district court erred in concluding that DSC had notice of Dish's claim, the plaintiffs fail to demonstrate that error requires reversal. *See Shinseki v. Sanders*, 556 U.S. 396, 410 (2009) (explaining that "party seeking reversal normally must explain why the erroneous ruling caused harm").

**Conclusion**

The plaintiffs fail to demonstrate that the district court (1) relied on the 2012 Demand; (2) erred in relying on the 2013 Demand; or (3) abused its discretion in extending its award of specific performance to DSC. Accordingly, we affirm. As a final matter, we grant the parties' motions to file their briefs in Appeal No. 15-1373 under seal; the plaintiffs' motion to file their opening brief in Appeal No. 17-1110 under seal; and Dish's motion to file Volume 3 of its Supplemental Appendix under seal. We likewise grant the plaintiffs' motion to file Appendix Volume 3 under seal.[14] To the extent we rely on pages 105–06 and 153 of Appendix Volume 3 to resolve this appeal, Dish has provided redacted copies of those pages of the record. Those pages

---

[14] Dish asks us to exclude certain pages of Appendix Volume 3 from the record. Because we don't rely on any of those pages to resolve this appeal and because those pages will remain under seal, we deny this request as moot.

19

appear in the redacted version of Appendix Volume 3 filed on December 2, 2016, in Appeal No. 15-1373.

Entered for the Court


Nancy L. Moritz
Circuit Judge